LEVI DECKER, Respondent, v. MATTHEW E. HUGHES, Appellant.

No. 458; March 6, 1865.

**Contract—Option.—A Contract may be so Made as to be Optional** on one of the parties and obligatory on the other, or obligatory at the election of one of the parties; but if as so made the option or election is to be exercised within a time named, after that time it cannot be claimed as a right.

APPEAL from Twelfth Judicial District, San Francisco County.

S. F. & J. Reynolds for respondent; C. V. Gray for appellant.

SHAFTER, J.—Replevin to recover the possession of two billiard tables. It was admitted that the tables belonged originally to the plaintiff, but the defendant claimed that they had become his property by purchase before the bringing of the action. The contract under which the defendant claimed was made by the plaintiff with one Clayton, and was as follows:

"It is hereby mutually agreed between parties whose names are signed to this instrument, that R. H. Vance, as agent for Levi Decker, has this first day of July, 1862, leased to H. J. Clayton of San Francisco three rosewood billiard tables, slate beds, complete, for the term of one year from date at the

13

monthly rent of one hundred dollars payable monthly in advance. The said tables are to be placed in the Lick House in this city and to be put up and kept in repair by said Clayton at his own expense. It is also further agreed that the said Clayton has the privilege of purchasing the said tables on or before the expiration of this lease, for the sum of twelve hundred dollars, with interest added at the rate of two per cent a month from the commencement of this lease to the time of purchase. It is also further agreed that if the said Clayton should elect to purchase the said tables within the term of this lease, all rents which he may have paid for the use of said tables shall be counted in as part payment for said tables.

"San Francisco, May 29, 1862."

This contract was signed and sealed by both parties.

It appeared that R. H. Vance was general agent of plaintiff, and had authority to do anything in the way of making contracts for him—plaintiff residing in New York. That on the 5th of July, 1862, the plaintiff brought suit against Clayton for one hundred dollars, for the rent mentioned in the agreement set out in the answer, for the month of July, 1862, and recovered a judgment for said amount and costs, amounting to one hundred and eleven dollars and fifty cents, which was paid by Clayton. That Clayton thereafter assigned all his rights and claims of every kind under and by virtue of said agreement, and said payment under said judgment, to the defendant, and plaintiff had notice thereof. That after said assignment, plaintiff's agent delivered to Clayton (who informed him he had assigned to defendant) three billiard tables, packed up, which were then delivered to defendant by Clayton. That defendant unpacked the tables; found one badly damaged and imperfect; notified plaintiff's agent, who came and inspected it, and took it away for repair, promising to deliver another in its place.

That subsequently in August, 1862, defendant, by his attorney, demanded of plaintiff possession of the third billiard table to which he was entitled under the agreement; that plaintiff said he would deliver it if defendant would put it in the Lick House; that defendant's attorney replied, it was time enough to ask defendant to put the tables in the Lick House when plaintiff had delivered them to defendant. That the third table never was afterward delivered to defendant.

That, on the thirtieth day of June, 1863, defendant's attorney called on plaintiff's counsel, John Reynolds (at his office), and told him that he called on behalf of defendant, as assignee of Clayton, to notify plaintiff, through his agent, Vance, that defendant elected to purchase the tables under the agreement, and that defendant was then ready to pay, and he produced for payment, thirteen hundred and forty-seven dollars and twenty-eight cents (in treasury notes), the amount required, according to said agreement, for said tables, if said third table was delivered to him; or, if the plaintiff chose not to deliver the third table, defendant was ready to pay the proportionate price for the two defendant had, amounting to eight hundred and fifty-seven dollars and fifty-two cents. That Reynolds said plaintiff's agent Vance was not, as he believed, in town, and he (Reynolds) was not authorized to receive any money or give any title to the tables; but if they chose to pay any money to him, he would receive it. That no money was paid to him, and he informed defendant's attorney (in reply to an inquiry) that plaintiff's agent, as he believed, made his headquarters when in San Francisco at Vance's Daguerreau Gallery. That defendant's attorney then went to said gallery, and saw the proprietor, who informed him that plaintiff's agent was in Washoe, but made his headquarters when in San Francisco at said gallery. That defendant's attorney then stated in said gallery, and to said proprietor, what he had already said to Reynolds, and produced and exhibited the money which he was prepared to pay as before mentioned, and the proprietor replied he had no authority to act for plaintiff or his agent, and knew nothing about the matter. That defendant's attorney then made a similar offer at the defendant's place of business; and on the same day copies of the following notification, signed by defendant and addressed to plaintiff's agent, were left respectively at the office of Reynolds and at Vance's gallery before mentioned:

"Mr. Levi Decker or R. H. Vance his agent:

"Sir—I hereby notify you that I elect to purchase the three billiard tables leased by you to H. Clayton, on the terms mentioned in said lease, which was assigned to me; and I am ready to pay the money therefor on delivery of the third table, which I have not yet received. Or, if you prefer not to de-

liver the third table, I am ready to pay you for the two tables in proportion to the price fixed in the lease for the three.

"Very respectfully yours,

"M. E. HUGHES.

"San Francisco, June 30, 1863."

That no demand has since been made on defendant for said moneys or any part thereof, and defendant has never made any offer to pay it since, or other than as above related.

First. It is insisted on the part of the appellant that he, by the legal effect of the foregoing facts, owned and was entitled to the possession of the two tables sued for, at the commencement of the action.

The contract contains mutual promises. The plaintiff's promise to sell the tables to Clayton in the event that Clayton should elect to buy is supported by Clayton's agreement to accept a lease of the tables at a rent which he covenanted to pay. If the right to purchase had not been conceded, we must intend that the tables would not have been hired. The plaintiff's promise to sell goes to the consideration of Clayton's promise to pay rent, and as distinctly as does the promise to bail, or the actual bailment of the tables. There can be no doubt but that a contract may be so made as to be optional on one of the parties and obligatory on the other, or obligatory at the election of one of them: Giles v. Bradley, 2 Johns. Cas. (N. Y.) 253; Disborough et al. v. Neilson et al., 3 Johns. Cas. (N. Y.) 81; 1 Parson on Contracts, p. 373, sec. 9. So far as this point is concerned, we adopt the views presented on behalf of the appellant. But Clayton's right to purchase, in his election, was to be exercised "on or before the expiration of the lease"; and the lease was "for the term of one year from date." The lease bears date May 29, 1862, and the defendant, as Clayton's assignee, did not elect to buy until the 30th of June, 1863. The question is whether the parties in the use of the word "date" referred to May 29th written at the end of the paper, or to the first day of July named in the body of it, as the day when the tables were "leased." We consider the clear force of the language to be that the act of leasing was perfected on the 1st of July, the period of the bailments to be computed from the date of the instrument. The result is that the offer to purchase came too late.

There are other points made for the appellant, but none that require special notice.

Judgment affirmed.

We concur: Sanderson, C. J.; Currey, J.; Rhodes, J.